## Gold v. Frank

*Ronald H. Israelit,* for plaintiffs.
*DeAngelis & Kaufman,* for defendants.

GROSHENS, J., July 31, 1961.—This is an action in equity by which plaintiffs seek to enjoin defendants from negotiating the sale, or selling, of a plastic shoe last allegedly developed by the parties, and to have defendants render an accounting of all transactions on behalf of the parties. . .

### Discussion

The recent case of McRoberts v. Phelps, 391 Pa. 591 (1958), fully sets forth the law with respect to the ex-

istence of a joint venture. We take the liberty of quoting at length from that opinion: "Appellants' first contention is that appellees did not sustain their burden of proving a joint venture known as Phelps Prospecting. A joint venture has been defined as a 'special combination of two or more persons, where, in some specific venture, a profit is jointly sought without any actual partnership or corporate designation': 30 Am. Jur., Joint Adventures, §3. The existence or non-existence of a joint venture depends upon what the parties intended in associating together. It must arise from a contractual basis, although the contract need not be express but may be implied from the acts and conduct of the parties. To constitute a joint venture certain factors are essential: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction. The existence or non-existence of a joint venture depends on the facts and circumstances of each particular case and no fixed nor fast rule can be promulgated to apply generally to all situations. A joint venture is not a partnership, a tenancy in common, nor a so-called 'mining partnership'; it is an association of parties— of rather recent origin—to engage in a single business enterprise for profit." At pp. 598-600 (See footnotes to case for extensive citation of authority).

These are the sign-posts which guide us in this case. Beryl Frank, Raymond Gold and Jack Barrack conceived of a need for a plastic shoe last in the shoe industry. Raymond Gold brought the parties together. Jack Barrack mentioned the need for improved and less expensive shoe lasts. Beryl Frank decided he could

develop a plastic shoe last that would be an improvement on the present lasts, with less expense. Each of the parties was to contribute his own services to the enterprise. Both Gold and Barrack invested money. Beryl Frank, the "inventor", was to have an equal share because he was to actually develop the technical features of the plastic shoe last. Despite the failure to reach an agreement in writing as to incorporation, plaintiffs made payments to Beryl Frank representing their contributions in the joint venture, which he accepted, and thereafter the parties spent many hours together working on their plastic shoe last. Defendant admits that they were practically living together at that time. Various tests were made in Jack Barrack's factory and progress was apparently being made. The parties had agreed to share profits equally and defendant Beryl Frank, to insure his one-third interest, desired to contribute one-third of the cash needed to the enterprise but his contribution of ability was accepted by Gold and Barrack because of his lack of funds. The agreement of the parties was express, although never set forth in writing. Despite the denials of Beryl Frank, it is evident that the parties agreed to act in concert, to share the profits of their labor, to develop, manufacture and sell a plastic shoe last. The actions of the parties were directed by their agreement.

Unfortunately, the happy union did not last. Beryl Frank admits that he sought to have either Raymond Gold or Jack Barrack agree to share with him 50-50 and eliminate the third man. When neither one would agree, Beryl Frank decided on a greater share, all. He began negotiations with a number of firms. He told his co-adventurers that he had offers for the plastic shoe last. He told their attorney that he had sold it, and suggested to Jack Barrack that he had better place a high value on the invention so he could get a greater amount when he sued for his share. Thus Beryl Frank

violated the fiduciary duty which he owed to his joint adventurers: McRoberts v. Phelps, 391 Pa. 591 (1958), 20 P. L. Encyc. Joint Adventures, § 2. Defendant had a duty to account for property or money received by him, and for all money coming into his hands; P. L. Encyc. Joint Adventures, §2, but he absolutely refused to account to his co-adventurers.

Beryl Frank may or may not have developed the plastic shoe last, but he said that he had, and we think we may take him at his word. Certainly he has a duty to account to plaintiffs. Certainly they are entitled to a share of the profits if there are any, and Beryl Frank may not sell the plastic shoe last in his individual capacity.

An injunction is warranted in this case because an action at law will not be a suitable remedy. Defendant has admitted that he has approximately $27,000 in judgments against him. The harm that plaintiffs may suffer if Beryl Frank is able to sell the plastic shoe last is incalculable. Furthermore, Beryl Frank has a history of convictions against him for crimes of a fraudulent nature and we believe the court of equity is best equipped to deal with any attempts to defraud plaintiffs.

Defendant has utterly failed to prove his counterclaim and we find for plaintiffs on the counterclaim.

This case presents an unusually difficult task for a trial judge because of the glaring contradictions between the parties. However, Beryl Frank proved to be an unreliable witness and his testimony was proved to be false on a number of occasions by his own witnesses which has eased the burden placed on the trial judge. Secondly, the fact that a secret process is involved, known only to defendants, has made the matter more difficult of specific proof as to the existence or non-existence of a plastic shoe last developed by defendants in pursuance of the joint venture. Again the

burden was made lighter through the admissions of Beryl Frank that he had invented or developed a plastic shoe last. Despite his present denials, we have treated this matter as if a plastic shoe last were developed. If it was not, Frank will not be harmed. If it was developed, then he owes a duty to account to plaintiffs, and to give them their share of the profits. Lastly, neither party has cited any cases on point as to the rights of co-adventurers in a secret process, and to what extent the details of the secret process must be proven, when the details of such process are peculiarly within the exclusive knowledge of defendant. In other words, the trial judge has not had the benefit of authority which governs a case where a trial judge is convinced that a defendant has knowledge of a secret process, but where plaintiffs are unable to define or describe the details, mechanics or formulae of the secret process, and where defendant maintains at trial that he has no knowledge of a secret process. Our own research failed to disclose authorities that govern this case. We have, therefore, treated it narrowly on its facts and have reached the conclusion that we find must be reached under these facts.

Upon an accounting, Beryl Frank must account for the sums contributed to him by his co-adventurers, and for no other sums. The $10,000 received by Beryl Frank for a one-third interest in the rights of any products developed by Prototype Engineering Company need not be included because this transaction in no way legally affects the joint venture. There is no evidence before this court that a plastic shoe last was sold by Beryl Frank and, therefore, he will not account for any profits received by him for the joint venture. The burden will then shift to plaintiffs to prove, if they are able, that Beryl Frank has sold a plastic shoe last process. This proof may be offered either by direct testimony or through depositions. If plaintiffs fail to

offer such proof from the buyer, or any equally direct source, the court will approve the accounting in the amount of the contributions. We will not speculate as to the value of a plastic shoe last process, or possible profits, on the evidence before us. It is impossible for the court to deal with something which has not been defined, described or exhibited to the court, as an object, a series of chemical symbols, or a writing. . .

## Decree

And now, July 31, 1961, it is decreed that:

1. Defendants, Marcia Frank and Beryl Frank, are hereby enjoined permanently from negotiating with third parties for the manufacture or sale, or the licensing of third parties for the right to manufacture or sell the plastic shoe last, without the participation and consent of plaintiffs;

2. Defendants are enjoined from disposing of any of the assets of the joint venture without the participation and consent of plaintiffs;

3. An account be stated of all the transactions and dealings on behalf of the joint venture and that the parties share such expenses, profits or losses which shall upon such accounting be adjudged to have occurred. The account to be rendered within 60 days of the date of this decree;

4. Plaintiffs be given 60 days from the date of the filing of the account in which to produce testimony of profits received by defendants;

5. Defendants shall pay the costs of this proceeding; each party to pay their own counsel fee.

6. Judgment for plaintiffs on the counter-claim.

The prothonotary is directed to give counsel in the case notice as required by the rules of equity practice and unless exceptions are filed within 20 days, the decree nisi entered above will become the final decree.